# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative,

      Plaintiff,

vs.

WASHTENAW COUNTY, DEPUTY JACOB GOMBOS, individually, DEPUTY JONATHAN EARLEY, individually, DEPUTY JANE/JOHN DOE 1, individually, DEPUTY JANE/JOHN DOE 2, individually, DEPUTY JANE/JOHN DOE 3, individually, DEPUTY JANE/JOHN DOE 4, individually DEPUTY JANE/JOHN DOE 5, individually DEPUTY JANE/JOHN DOE 6, individually

      Defendants.

Case No.
Hon.
Mag.

---

Todd F. Flood (P58555)
Michael D. Weaver (P43985)
Maura B. Battersby (P79089)
FLOOD LAW, PLLC
Attorneys for Plaintiff
155 W. Congress, Suite 350
Detroit, MI 48226
(248) 547-1032
tflood@floodlaw.com
mweaver@floodlaw.com
mbattersby@floodlaw.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LARRY JENUWINE, as Personal Representative for the Estate of JOHN JENUWINE, by and through his attorneys Flood Law, PLLC, complains against Defendants as follows:

## INTRODUCTION

This matter arises from the January 6, 2026 execution of John Jenuwine by Washtenaw County Sheriff's Office deputies. The Washtenaw County Sheriff's Office illegally exerted deadly force on John Jenuwine, on twenty-nine occasions before withholding life-saving aid and forcing him to suffer and die alone in his vehicle.



The excessive and illegal force used by the Washtenaw County Sheriff's

Deputies was in violation of the United States Constitution in addition to Washtenaw County's own policies. The conduct demonstrated gross negligence and willful and wanton misconduct. The egregious conduct of the entire responding team was also a clear indicator of Washtenaw County's failure to adequately train or supervise their officers.

Plaintiff brings this action under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, gross negligence and willful and wanton misconduct, and Michigan's Wrongful Death Act, M.C.L. § 600.2922. The individual deputy defendants are sued in their individual capacities only. Washtenaw County is sued under *Monell* for institutional failures in training and policy enforcement that were the moving force behind Mr. Jenuwine's death.

## JURISDICTION

1. This is a civil action for monetary damages arising out of the police shooting and killing of the decedent, JOHN JENUWINE, on January 6, 2026, in Ypsilanti, Michigan.

2. This case is being brought pursuant to 42 U.S.C. §1983, which guarantees citizens of the United States an action at law against any person who, acting under color of law, deprives them of their rights secured by the United States Constitution.

3

3. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV.

4. Plaintiff seeks all damages allowed under 42 U.S.C. §1983 and all damages allowed under M.C.L. §600.2922, known as the Michigan Wrongful Death Act, for the violation of the decedent's Fourth Amendment Rights.

5. In addition, Plaintiff seeks punitive damages, costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, or as otherwise allowed at common law or by statute.

6. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §1983. This Court has supplemental jurisdiction of the Michigan law state claims which arise out of the nucleus of operative facts common to Plaintiff's federal claims pursuant to 28 U.S.C. §1367.

7. The amount in controversy exceeds seventy-five thousand dollars, excluding interest, costs, and attorney fees.

## **VENUE**

8. Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. §1391. The events took place in the City of Ypsilanti, County of Washtenaw, State

of Michigan, which is located within the jurisdiction of the United States District Court for the Eastern District of Michigan, Southern Division.

## PARTIES

9.      The decedent, JOHN JENUWINE, was, at all material times, a resident of China Township, Michigan.

10.     Plaintiff, LARRY JENUWINE, the father of the deceased, JOHN JENUWINE, is a resident of Cottrellville, Michigan, and has been duly appointed as the Personal Representative for the Estate of JOHN JENUWINE, by the St. Clair County Probate Court.

11.     Defendant, WASHTENAW COUNTY, is a municipal entity organized under the laws of the State of Michigan, which operates, manages, and controls the Washtenaw County Sheriff's Office.

12.     The Washtenaw County Sheriff's Office is headquartered at 2201 Hogback Road, Ann Arbor, Michigan. The Department claims to build systems rooted in dignity, safety, and care. It publicly acknowledges its authority must be exercised "judiciously and with respect for equitable treatment, human rights, dignity, and the sanctity of human life." [1]

---

[1] "Subject Control/Use of Force" (3.04 GO), attached as **Exhibit A**.

13.     DEPUTY JACOB GOMBOS is sued in his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

14.     DEPUTY JONATHAN EARLEY is sued in his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

15.     DEPUTY JANE/JOHN DOE 1 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

16.     DEPUTY JANE/JOHN DOE 2 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

17.     DEPUTY JANE/JOHN DOE 3 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

18.     DEPUTY JANE/JOHN DOE 4 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

19.     DEPUTY JANE/JOHN DOE 5 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

20.     DEPUTY JANE/JOHN DOE 6 is sued in her/his individual capacity, was, at all material times, acting under color of law as a police officer employed by Washtenaw County Sheriff's Office, and, by all information and belief, resides in the State of Michigan.

## **FACTUAL ALLEGATIONS**

21.     The material events that give rise to this lawsuit began at or around 1:24 a.m. on January 6, 2026, when a man identified as "Matt" called Washtenaw County 911 Central dispatch. Matt reported he observed a "white like turtle top like construction van" driving "a little erratic" in his neighborhood near "a white van driving hazardously"

22.     At or around 1:30 a.m., a man identifying as "Christopher" called Washtenaw County 911 Central dispatch. Christopher reported there were "two

black guys" in a "white van." He reported the two black guys had been following his wife, and had waved a gun at her. Christopher then got in his vehicle and began to follow the "two black guys." He told dispatch "there's two black guys. I see two black guys – or two guys in the vehicle . . . with a hand gun."

23.     Ypsilanti Police Department officers and Washtenaw County Sheriff's deputies did not identify Plaintiff's decedent, JOHN JENUWINE, for over twenty minutes.

24.     At 1:53 a.m. officers reported to dispatch, "we're behind him. Looks like a Nissan transit van. And we're behind a building on the corner of Prospect and Michigan driving with no lights on. Coming back out to Prospect now."

25.     At 1:54 a.m. officers reported the operator of the Nissan van was a "white male driver, yelling out the window." Dash camera footage demonstrated that the single occupant in the Nissan van was a white man. There was no mention of a gun or weapon of any kind. **Exhibit B**[2].

26.     At 1:55 a.m., JOHN JENUWINE backed his vehicle, stopping right next to an officer standing in the roadway, and giving this officer a clear view of his person, including his hands and arms.

---

[2] Dash Camera Footage can be found here: http://bit.ly/4xkSDHo

27.     At 1:56 a.m., an officer reported to dispatch that the Nissan van was "occupied by one white male." Dispatch confirmed "one white male" seconds later.



28.     At 1:58 a.m. an officer noted "[i]t's a heavy-set white male. I don't think he's going to get far."

29.     In less than five minutes, it was confirmed five separate times that the JOHN JENUWINE did not match the description of the vehicle "Christopher" reported twenty-five minutes prior.

30.     Despite this, officers continued their pursuit of JOHN JENUWINE.

31.     At 2:00 a.m., JOHN JENUWINE drove into the Dollar General parking lot, located on Ecorse Road in Ypsilanti, and stopped his vehicle. He was followed into the parking lot by two patrol vehicles. There were two patrol vehicles facing southeast and three facing northwest on Ecorse Road.

32.     JOHN JENUWINE began driving slowly towards Ecorse Road, with the two patrol vehicles following him. Police officers surrounding him on Ecorse Road did not block his travel, instead they made maneuvers to get out of his path of travel and allowed the pursuit to continue. **Exhibit C[3]**.



---

[3] Dash Camera Footage can be found here: https://bit.ly/4v0Noeh

33.     At approximately 2:01 a.m. a white van traveling in the opposite direction of JOHN JENUWINE and the police pursuit appears in the dash camera footage. There was no attempt by any of the responding law enforcement to investigate this other white van, despite it being clear that JOHN JENUWINE was not "two black guys," and had shown no signs of a gun or weapon of any kind. **Exhibit D**[4].



---

[4] Dash Camera Footage can be found here: https://bit.ly/4v0mNOm

34. At 2:02 a.m., Washtenaw County Sheriff Office deputies advised Ypsilanti Police Department officers to "get behind them" to allow Sheriff's deputies to take the lead on the pursuit.

35. At 2:04 a.m., a Sheriff's deputy pleaded "YPD! Please, please stop!" Apparently requested Ypsilanti Police to cease participation.

36. At 2:05:34 a.m., a Washtenaw County Sheriff Office's deputy rammed his/her vehicle into JOHN JENUWINE's vehicle in a dangerous maneuver called a "PIT."

37. Washtenaw County Sheriff's Office's guidelines classify such a maneuver as "deadly force."[5]

38. "Ramming," which the Washtenaw County Sheriff's Office's policies define as "the intentional collision of the emergency vehicle with the fleeing vehicle(s) to disable, stop, or alter the course of the fleeing vehicle," is "prohibited unless the action is in conformance with the agency's Subject Control/Use of Force policy." Washtenaw County Sheriff's Office Vehicle Pursuits 3.05 RR, **Exhibit E**.

39. It was immediately noted that the PIT caused JOHN JENUWINE's airbags to deploy.

---

[5] "Employees shall not ram or utilize roadblock techniques on the fleeing vehicle or individual unless the use of deadly force is justified." Exhibit A, p 37.

40.     At 2:05:56 it was noted that JOHN JENUWINE's vehicle was suffering "mechanical issues," which were evident on dash camera footage.

41.     Despite this clear decrease of resistance, the Washtenaw County Sheriff's deputies did not "immediately reduc[e] force," as required by their office's policies.

42.     The Use of Force Policy dictates, "[e]mployees shall continue to use de-escalation techniques after initiating, or being witness to, a use of force incident. The level of force shall be de-escalated immediately as the level of resistance encountered decreases, provided the employee remains in control and as safety permits." Exhibit A, p 3-4.

43.     Instead, just one minute later, at 2:06:48 a.m., a *second* PIT maneuver was executed on JOHN JENUWINE's damaged vehicle. This time, causing the vehicle to overturn, with the passenger side coming to rest on the roadway, and the driver's side in the air. **Exhibit E**[6].

44.     JOHN JENUWINE's vehicle was completely immobilized following the second PIT maneuver. The threat, if any, that the van had posed as a moving vehicle was completely and permanently neutralized in that moment.

---

[6] Dash Camera Footage can be found here: https://bit.ly/4ogyMoq

45. At 2:06:57 a.m., just six seconds after the vehicle was overturned, a fire ignited in the undercarriage of JOHN JENUWINE's vehicle. Smoke was visible inside and above the vehicle. *See* Exhibit E.

46. Deputies did not investigate or address the fire caused by their two unjustified, unlawful, and excessive assaults of JOHN JENUWINE. Instead, deputies leapt out of their patrol vehicles and ran towards the front of JOHN JENUWINE's vehicle with their guns drawn.

47. Deputies left JOHN JENUWINE in a vehicle with an ignited fire poised to spread and endanger JOHN JENUWINE's life.

48. Deputies drew their weapons and pointed them at JOHN JENUWINE despite countless confirmations that JOHN JENUWINE did not meet the description provided by "Christopher," and without having investigated other area vehicles.

49. Deputies drew their weapons and pointed them at JOHN JENUWINE despite JOHN JENUWINE not having threatened them in any way.

50. Deputies drew their weapons and pointed them at JOHN JENUWINE despite consistent views of JOHN JENUWINE and into his vehicle in the twelve-minute, low speed, pursuit, without any sign of a weapon of any kind.

51. At 2:06:58 deputies shouted "show me your [expletive] hands! Show me your [expletive] hands!"

52. At 2:07:00 deputies, after rushing JOHN JENUWINE's vehicle, in the dark, and without pause to assess and/or allow JOHN JENUWINE to comply with their orders, shouted "He's got a gun! He's got a gun! He's got a gun! Gun! Gun! Gun! Gun! Gun!"

53. Deputies began shooting at JOHN JENUWINE.

54. At the time the shooting began there were two deputies shooting towards the front windshield, one shooting towards the undercarriage of the vehicle, and one shooting from behind towards the back doors.

55. The deputies' shooting positions and resulting crossfire was dangerous, and reckless.

56. Deputies fired 27 shots at JOHN JENUWINE.

57. The Use of Force policy required deputies to justify each and every use of deadly force, which it defines as "each discharge or application of deadly force." Exhibit A, p 35.

58. Deputies did not reassess after either PIT maneuver or before each of the 27 discharges of their weapons.

59. There were two deputies observing the shooting, in view of dash camera video, that did not intervene or make any attempts to correct their fellow deputies unjustified and unlawful conduct.

60. JOHN JENUWINE did not have a gun or weapon of any kind on his person or in his vehicle.

61. There was no indication that JOHN JENUWINE was a threat following two impacts from a vehicle and the impact of his vehicle slamming onto the pavement after being overturned.

62. Following the egregious, unlawful, and dangerous discharge of 27 bullets into JOHN JENUWINE's vehicle, at 2:07:27 deputies observed JOHN JENUWINE alive in his vehicle noting, "eyes on him. He's moving around a little bit."

63. Deputies continued to report JOHN JENUWINE was "armed with a shotgun." This was without observing any type of firearm or weapon, and the alleged report of "two black guys" having a "handgun," not a shotgun.

64. Despite observing JOHN JENUWINE was still alive, deputies did not call for medical aid. Instead, they waited for JOHN JENUWINE to die[7].

65. At 2:08:16, dispatch asked whether anyone was "aware if [JOHN JENUWINE] was hit by the shots." K9-4 reported "yeah, probably." Still no person called for aid. The Washtenaw County Sheriff's Office knowingly let JOHN JENUWINE suffer alone, in the dark.

---

[7] Radio traffic is contained in Dash Camera Footage, and is found here: https://bit.ly/4fHkhbj

66.     At 2:13:08, deputies at the scene reported JOHN JENUWINE was "kicking around inside the vehicle right now." Still, no person called for aid. The Washtenaw County Sheriff's Office knowingly allowed JOHN JENUWINE to suffer alone, in the dark, until he ultimately died in his vehicle.

67.     Despite reasonable policing and WCSO policies to the contrary, deputies never ordered medical aid to JOHN JENUWINE. They callously, cruelly, and illegally watched him slowly bleed from their inflicted gunshot wounds until he died from those wounds.

## COUNT I
## UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE DEPUTY JANE/JOHN DOE 1 (First PIT maneuver 2:05 a.m.)

68.     Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

69.     Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

70.     The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

71.     Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States

17

Constitution that included the right to personal safety and bodily integrity and his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

72.     Defendant, DEPUTY JANE/JOHN DOE 1, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JANE/JOHN DOE 1, was acting under the color of state law and in her/his capacity as a Washtenaw County Sheriff's Deputy and her/his acts and/or omissions were conducted within the scope of her/his official duties and employment.

73.     By executing a dangerous and violent "PIT" maneuver, Defendant, DEPUTY JANE/JOHN DOE 1, acted under color of law with deliberate indifference, and violated JOHN JENUWINE's right under the Fourth Amendment to the United States Constitution to be free from excessive force.

74.     Defendant did not observe Plaintiff commit any violent felony or crime at any time prior to or during the time of confrontation and dangerous assault of JOHN JENUWINE with his/her vehicle.

75.     The severity of the crime at issue was minor.

76.      Defendants, including DEPUTY JANE/JOHN DOE 1, had known for over ten minutes that JOHN JENUWINE, as a single, white male, did not match the report of "two black guys" with a "handgun." JOHN JENUWINE did not threaten Defendants, or anyone else, in any way before, during or after,

18

Defendant DEPUTY JANE/JOHN DOE 1's dangerous assault with his/her vehicle.

77. JOHN JENUWINE did not impose any immediate threat or reasonable threat of harm to Defendant DEPUTY JANE/JOHN DOE 1 or any other person in the immediate vicinity at any time prior to or during the confrontation and attack with her/her vehicle.

78. Defendant DEPUTY JANE/JOHN DOE 1 acted intentionally, maliciously, and in reckless disregarding for JOHN JENUWINE's clearly established right to be free from unreasonable and excessive use of force as guaranteed by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

79. A reasonable police officer would not have used excessive force under the circumstances, indeed, the PIT maneuver was made by DEPUTY JANE/JOHN DOE 1 in violation of the Washtenaw County Sheriff's Office's policies, including the "Subject Control/Use of Force" (3.04 GO) and "Vehicle Pursuits" (3.05 RR) policies. **EXHIBIT A** and **EXHIBIT E**, respectively.

80. Defendant, DEPUTY JANE/JOHN DOE 1's actions constituted excessive force in violation of the Fourth Amendment.

81. The misconduct of Defendant, DEPUTY JANE/JOHN DOE 1, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
b. Death;
c. Conscious pain and suffering;
d. Fright and shock;
e. Anxiety;
f. Mental anguish;
g. Emotional distress;
h. Humiliation and/or mortification;
i. Economic loss;
j. Punitive damages;
k. Exemplary damages;
l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,
n. Any other damages allowed by law.

82. The acts and/or omissions of Defendant, DEPUTY JANE/JOHN DOE 1, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has

retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT II
### UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE DEPUTY JANE/JOHN DOE 2 (Second PIT maneuver 2:06:48 a.m.)

83.    Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

84.    Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

85.    The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

86.    Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution that included the right to personal safety and bodily integrity and

21

his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

87.    Defendant, DEPUTY JANE/JOHN DOE 2, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JANE/JOHN DOE 2, was acting under the color of state law and in her/his capacity as a Washtenaw County Sheriff's Deputy and her/his acts and/or omissions were conducted within the scope of her/his official duties and employment.

88.    By executing a dangerous and violent "PIT" maneuver, Defendant, DEPUTY JANE/JOHN DOE 2, acted under color of law with deliberate indifference, and violated JOHN JENUWINE's right under the Fourth Amendment to the United States Constitution to be free from excessive force.

89.    Defendant did not observe Plaintiff commit any violent felony or crime at any time prior to or during the time of confrontation and dangerous assault of JOHN JENUWINE with his/her vehicle.

90.    The severity of the crime at issue was minor.

91.    Defendants, including DEPUTY JANE/JOHN DOE 2, had known for over ten minutes that JOHN JENUWINE, as a single, white male, did not match the report of "two black guys" with a "handgun." JOHN JENUWINE did not threaten Defendants, or anyone else, in any way before, during or after,

22

Defendant DEPUTY JANE/JOHN DOE 2's dangerous assault with his/her vehicle.

92.    JOHN JENUWINE did not impose any immediate threat or reasonable threat of harm to Defendant DEPUTY JANE/JOHN DOE 2 or any other person in the immediate vicinity at any time prior to or during the confrontation and attack with her/her vehicle.

93.    Defendant DEPUTY JANE/JOHN DOE 2 acted intentionally, maliciously, and in reckless disregarding for JOHN JENUWINE's clearly established right to be free from unreasonable and excessive use of force as guaranteed by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

94.    A reasonable police officer would not have used excessive force under the circumstances, indeed, the PIT maneuver was made by DEPUTY JANE/JOHN DOE 2 in violation of the Washtenaw County Sheriff's Office's policies, including the "Subject Control/Use of Force" (3.04 GO) and "Vehicle Pursuits" (3.05 RR) policies. **EXHIBIT A** and **EXHIBIT E,** respectively.

95.    Prior to his/her assault of JOHN JENUWINE with his/her vehicle, Defendant DEPUTY JANE/JOHN DOE 2 was aware that JOHN JENUWINE's vehicle was suffering "mechanical issues," following the unlawful and excessive

23

PIT maneuver performed by Defendant DEPUTY JANE/JOHN DOE 1, approximately 1-2 minutes prior.

96. Prior to his/her assault of JOHN JENUWINE with his/her vehicle, Defendant DEPUTY JANE/JOHN DOE 2 was aware that the airbags in JOHN JENUWINE's vehicle had deployed and had reason to believe JOHN JENUWINE was disoriented, injured, and/or otherwise incapacitated.

97. The damage to JOHN JENUWINE's vehicle and accompanying mechanical issues, and his physical state, as a result of Defendant DEPUTY JANE/JOHN DOE 1's PIT maneuver, decreased any resistance, Defendant DEPUTY JANE/JOHN DOE 2's maintenance of the same level of force violated Washtenaw County Sheriff's Office's policies: "Subject Control/Use of Force" (3.04 GO) and "8cantwait Subject Control Thresholds." **EXHIBIT A** and **EXHIBIT F**, respectively.

98. Defendant, DEPUTY JANE/JOHN DOE 2's actions constituted excessive force in violation of the Fourth Amendment.

99. The misconduct of Defendant, DEPUTY JANE/JOHN DOE 2, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

   a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from

24

an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;

b. Death;
c. Conscious pain and suffering;
d. Fright and shock;
e. Anxiety;
f. Mental anguish;
g. Emotional distress;
h. Humiliation and/or mortification;
i. Economic loss;
j. Punitive damages;
k. Exemplary damages;
l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,
n. Any other damages allowed by law.

100. The acts and/or omissions of Defendant, DEPUTY JANE/JOHN DOE 2, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an

amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT III
## UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE DEFENDANT DEPUTY JACOB GOMBOS (shooter)

101.   Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

102.   Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

103.   The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

104.   Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution that included the right to personal safety and bodily integrity and his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

105.   Defendant, DEPUTY JACOB GOMBOS, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JACOB GOMBOS, was acting under the color of state law and in his capacity as a

26

Washtenaw County Sheriff's Deputy and his acts and/or omissions were conducted within the scope of his official duties and employment.

106. It was clearly established in the Sixth Circuit prior to January 6, 2026, that deadly force is authorized only in rare circumstances and that individuals have a right not to be shot unless they are reasonably perceived as posing an imminent threat of serious bodily harm to officers or others.

107. Even possession of a weapon, lawful or unlawful, is not sufficient to justify the use of deadly force.

108. Without any justification or excuse, Defendant rushed JOHN JENUWINE's disabled vehicle, and began shooting at JOHN JENUWINE within seconds of rushing the vehicle.

109. Defendant, DEPUTY JACOB GOMBOS's actions constituted excessive force in violation of the Fourth Amendment.

110. The misconduct of Defendant, DEPUTY JACOB GOMBOS, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

    a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
    b. Death;
    c. Conscious pain and suffering;

27

    d. Fright and shock;
    e. Anxiety;
    f. Mental anguish;
    g. Emotional distress;
    h. Humiliation and/or mortification;
    i. Economic loss;
    j. Punitive damages;
    k. Exemplary damages;
    l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
    m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,
    n. Any other damages allowed by law.

111. The acts and/or omissions of Defendant, DEPUTY JACOB GOMBOS, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT IV
## UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE
## DEPUTY JONATHAN EARLEY (shooter)

112. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

113. Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

114. The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

115. Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution that included the right to personal safety and bodily integrity and his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

116. Defendant, DEPUTY JONATHAN EARLEY, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JONATHAN EARLEY, was acting under the color of state law and in his capacity as a Washtenaw County Sheriff's Deputy and his acts and/or omissions were conducted within the scope of his official duties and employment.

29

117. It was clearly established in the Sixth Circuit prior to January 6, 2026, that deadly force is authorized only in rare circumstances and that individuals have a right not to be shot unless they are reasonably perceived as posing an imminent threat of serious bodily harm to officers or others.

118. Even possession of a weapon, lawful or unlawful, is not sufficient to justify the use of deadly force.

119. Without any justification or excuse, Defendant rushed JOHN JENUWINE's disabled vehicle, and began shooting at JOHN JENUWINE within seconds of rushing the vehicle.

120. Defendant, DEPUTY JONATHAN EARLEY's actions constituted excessive force in violation of the Fourth Amendment.

121. The misconduct of Defendant, DEPUTY JONATHAN EARLEY, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

    a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
    b. Death;
    c. Conscious pain and suffering;
    d. Fright and shock;
    e. Anxiety;
    f. Mental anguish;
    g. Emotional distress;

30

h. Humiliation and/or mortification;
i. Economic loss;
j. Punitive damages;
k. Exemplary damages;
l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,
n. Any other damages allowed by law.

122. The acts and/or omissions of Defendant, DEPUTY JONATHAN EARLEY, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT V
## UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE
## DEPUTY JANE/JOHN DOE 3 (shooter)

31

123. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

124. Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

125. The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

126. Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution that included the right to personal safety and bodily integrity and his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

127. Defendant, DEPUTY JANE/JOHN DOE 3, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JANE/JOHN DOE 3, was acting under the color of state law and in his capacity as a Washtenaw County Sheriff's Deputy and his acts and/or omissions were conducted within the scope of his official duties and employment.

128. It was clearly established in the Sixth Circuit prior to January 6, 2026, that deadly force is authorized only in rare circumstances and that

individuals have a right not to be shot unless they are reasonably perceived as posing an imminent threat of serious bodily harm to officers or others.

129.   Even possession of a weapon, lawful or unlawful, is not sufficient to justify the use of deadly force.

130.   Without any justification or excuse, Defendant rushed JOHN JENUWINE's disabled vehicle, and began shooting at JOHN JENUWINE within seconds of rushing the vehicle.

131.   Defendant, DEPUTY JANE/JOHN DOE 3's actions constituted excessive force in violation of the Fourth Amendment.

132.   The misconduct of Defendant, DEPUTY JANE/JOHN DOE 3, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

   a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
   b. Death;
   c. Conscious pain and suffering;
   d. Fright and shock;
   e. Anxiety;
   f. Mental anguish;
   g. Emotional distress;
   h. Humiliation and/or mortification;
   i. Economic loss;
   j. Punitive damages;
   k. Exemplary damages;

l.  Attorneys fees and costs pursuant to 42 U.S.C. §1988;

m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,

n.  Any other damages allowed by law.

133.  The acts and/or omissions of Defendant, DEPUTY JANE/JOHN DOE 3, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT VI
## UNLAWFUL USE OF EXCESSIVE & DEADLY FORCE
## DEPUTY JANE/JOHN DOE 4 (shooter)

134.  Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

135. Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging excessive force in violation of the Fourth and Fourteen Amendments.

136. The Fourth Amendment of the United States Constitution protected Plaintiff's decedent, JOHN JENUWINE, from excessive force. The Fourteenth Amendment of the United States Constitution extends the Fourth Amendment protections to the states.

137. Plaintiff's decedent, JOHN JENUWINE, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution that included the right to personal safety and bodily integrity and his right to be free from unreasonable, excessive, or deadly force on January 6, 2026.

138. Defendant, DEPUTY JANE/JOHN DOE 4, is a "person" defined under 42 U.S.C. §1983. At all times relevant hereto, Defendant, DEPUTY JANE/JOHN DOE 4, was acting under the color of state law and in his capacity as a Washtenaw County Sheriff's Deputy and his acts and/or omissions were conducted within the scope of his official duties and employment.

139. It was clearly established in the Sixth Circuit prior to January 6, 2026, that deadly force is authorized only in rare circumstances and that individuals have a right not to be shot unless they are reasonably perceived as posing an imminent threat of serious bodily harm to officers or others.

35

140. Even possession of a weapon, lawful or unlawful, is not sufficient to justify the use of deadly force.

141. Without any justification or excuse, Defendant rushed JOHN JENUWINE's disabled vehicle, and began shooting at JOHN JENUWINE within seconds of rushing the vehicle.

142. Defendant, DEPUTY JANE/JOHN DOE 4's actions constituted excessive force in violation of the Fourth Amendment.

143. The misconduct of Defendant, DEPUTY JANE/JOHN DOE 4, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

    a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
    b. Death;
    c. Conscious pain and suffering;
    d. Fright and shock;
    e. Anxiety;
    f. Mental anguish;
    g. Emotional distress;
    h. Humiliation and/or mortification;
    i. Economic loss;
    j. Punitive damages;
    k. Exemplary damages;
    l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
    m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,

n. Any other damages allowed by law.

144. The acts and/or omissions of Defendant, DEPUTY JANE/JOHN DOE 4, were extreme and outrageous, and otherwise willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, JOHN JENUWINE. Plaintiff therefore requests an award of punitive and exemplary damages. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT VII
## FAILURE TO INTERVENE TO PREVENT VIOLATION OF JOHN JENUWINE'S CONSTITUTIONAL RIGHTS DEPUTY JANE DOE 5
## (woman in dash cam video)

145. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

146. Defendant, DEPUTY JANE DOE 5, is liable pursuant to 42 U.S.C. § 1983 for her failure to protect JOHN JENUWINE from the use of excessive and

37

deadly force in violation of the Fourth Amendment of the United States Constitution.

147. Defendant, DEPUTY JANE DOE 5, was aware that JOHN JENUWINE was one white male, not the "two black guys" with a "handgun," that had been reported.

148. Defendant, Defendant, DEPUTY JANE DOE 5, also knew that JOHN JENUWINE had not shown a weapon during the entirety of the pursuit of JOHN JENUWINE.

149. Defendant, DEPUTY JANE DOE 5, was aware that JOHN JENUWINE's actions did not justify deadly force, and further that the vehicle he was driving made a PIT maneuver particularly dangerous due to being prone to rollover.

150. Defendant, DEPUTY JANE DOE 5, was aware that JOHN JENUWINE's vehicle had been damaged by a PIT maneuver, that his airbags had deployed, that he was disoriented, and that his resistance, if any had been reduced, prior to a second PIT maneuver.

151. At the time JOHN JENUWINE's vehicle came to rest on its passenger side following the second use of deadly force, Defendant, DEPUTY JANE DOE 5, knew JOHN JENUWINE and his vehicle were incapacitated, that he had never matched the caller's description alleging a gun, and had never waived a gun or implied he was armed to any of the officers in pursuit.

38

152.   At the time Defendant, DEPUTY JANE DOE 5's fellow officers rushed JOHN JENUWINE's vehicle, Defendant, DEPUTY JANE DOE 5, knew the officers had their weapons pointed at JOHN JENUWINE, and that this was an additional unauthorized and unjustified use of excessive and deadly force, and that it could lead to the unjustified killing of JOHN JENUWINE.

153.   Defendant, DEPUTY JANE DOE 5 had opportunity and means to undertake de-escalation measures and engage in dialogue with JOHN JENUWINE instead of watching her fellow officers charge at JOHN JENUWINE with weapons drawn and pointed at him.

154.   Defendant, DEPUTY JANE DOE 5 had all opportunity and means to prevent the excessive number of shots that were fired from being discharged at JOHN JENUWINE.

155.   Despite having the opportunity and means to prevent the use of excessive/deadly force Defendant, DEPUTY JANE DOE 5, either actively participated in the shootings or passively did nothing to prevent JOHN JENUWINE's death.

156.   Defendant, DEPUTY JANE DOE 5, had the opportunity and means to assert, that JOHN JENUWINE, after having been fired upon 27 times, required medical attention to prevent his death. Instead, Defendant, DEPUTY JANE DOE

5, knowingly allowed JOHN JENUWINE to suffer alone, in the dark, until he ultimately died in his vehicle.

157. The misconduct of Defendant, DEPUTY JANE DOE 5, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

    a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
    b. Death;
    c. Conscious pain and suffering;
    d. Fright and shock;
    e. Anxiety;
    f. Mental anguish;
    g. Emotional distress;
    h. Humiliation and/or mortification;
    i. Economic loss;
    j. Punitive damages;
    k. Exemplary damages;
    l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
    m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and
    n. Any other damages allowed by law.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an

amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

### COUNT VIII
### FAILURE TO INTERVENE TO PREVENT VIOLATION OF JOHN JENUWINE'S CONSTITUTIONAL RIGHTS DEPUTY JOHN DOE 6
### (man in dash cam video)

158. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

159. Defendant, DEPUTY JOHN DOE 6, is liable pursuant to 42 U.S.C. § 1983 for her failure to protect JOHN JENUWINE from the use of excessive and deadly force in violation of the Fourth Amendment of the United States Constitution.

160. Defendant, DEPUTY JOHN DOE 6, was aware that JOHN JENUWINE was one white male, not the "two black guys" with a "handgun," that had been reported.

161. Defendant, Defendant, DEPUTY JOHN DOE 6, also knew that JOHN JENUWINE had not shown a weapon during the entirety of the pursuit of JOHN JENUWINE.

162. Defendant, DEPUTY JOHN DOE 6, was aware that JOHN JENUWINE's actions did not justify deadly force, and further that the vehicle

41

JOHN JENUWINE was driving made a PIT maneuver particularly dangerous due to being prone to rollover.

163. Defendant, DEPUTY JOHN DOE 6, was aware that JOHN JENUWINE's vehicle had been damaged by a PIT maneuver, that his airbags had deployed, that he was disoriented, and that his resistance, if any had been reduced, prior to a second PIT maneuver.

164. At the time JOHN JENUWINE's vehicle came to rest on its passenger side following the second use of deadly force, Defendant, DEPUTY JOHN DOE 6, knew JOHN JENUWINE and his vehicle were incapacitated, that he had never matched the caller's description alleging a gun, and had never waived a gun or implied he was armed to any of the officers in pursuit.

165. At the time Defendant, DEPUTY JOHN DOE 6's fellow officers rushed JOHN JENUWINE's vehicle, Defendant, DEPUTY JOHN DOE 6, knew the officers had their weapons pointed at JOHN JENUWINE, and that this was an additional unauthorized and unjustified use of excessive and deadly force, and that it could lead to the unjustified killing of JOHN JENUWINE.

166. Defendant, DEPUTY JOHN DOE 6 had opportunity and means to undertake de-escalation measures and engage in dialogue with JOHN JENUWINE instead of watching his fellow officers charge at JOHN JENUWINE with weapons drawn and pointed at him.

167. Defendant, DEPUTY JOHN DOE 6 had all opportunity and means to prevent the excessive number of shots that were fired from being discharged at JOHN JENUWINE.

168. Despite having the opportunity and means to prevent the use of excessive/deadly force Defendant, DEPUTY JOHN DOE 6, either actively participated in the shootings or passively did nothing to prevent JOHN JENUWINE's death.

169. Defendant, DEPUTY JOHN DOE 6, had the opportunity and means to assert, that JOHN JENUWINE, after having been fired upon 27 times, required medical attention to prevent his death. Instead, Defendant, DEPUTY JOHN DOE 6, knowingly allowed JOHN JENUWINE to suffer alone, in the dark, until he ultimately died in his vehicle.

170. The misconduct of Defendant, DEPUTY JOHN DOE 6, directly and proximately caused JOHN JENUWINE to suffer numerous injuries, including, but not limited to:

    a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
    b. Death;
    c. Conscious pain and suffering;
    d. Fright and shock;
    e. Anxiety;

f. Mental anguish;
g. Emotional distress;
h. Humiliation and/or mortification;
i. Economic loss;
j. Punitive damages;
k. Exemplary damages;
l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and,
n. Any other damages allowed by law.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

**COUNT IX**
**MONELL LIABILITY – WASHTENAW COUNTY**

171. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

172. Defendants DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, acted under color of law to violate JOHN JENUWINE's constitutional rights.

173. Defendant, WASHTENAW COUNTY, knew of and deliberately ratified or approved of the actions or inactions of Defendants, DEPUTIES

JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, that violated JOHN JENUWINE's constitutional rights.

174. The constitutional violations of Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, alleged in the previous paragraphs occurred because of the Defendant, WASHTENAW COUNTY's deliberate indifference to the rights of its residents to be free from exposure to excessive force by failing to adequately train and supervise its police officers regarding the use of deadly force.

175. Washtenaw County Sheriff Deputies/Officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, are routinely required to respond to complaints and assess whether the use of force would be reasonable.

176. In order to make a reasonable assessment of the use of force, Defendant, Washtenaw County, was required to properly train and supervise its officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, in the proper use of force.

177. Defendant, Washtenaw County, failed to adequately train and supervise its officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, in the use of deadly force.

45

178.   It was foreseeable to Defendant, Washtenaw County, that the failure to adequately train and supervise its officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, in the use of deadly force, would result in unjustified police shootings, the violation of its residents' Fourth Amendment right to be free from unreasonable seizures, and death, such as occurred to JOHN JENUWINE.

179.   Defendant, WASHTENAW COUNTY's failure to adequately train and supervise its officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, in the use of deadly force is closely related to or directly caused the violation of JOHN JENUWINE's Fourth Amendment right to be free from an unreasonable seizure that resulted in his death.

180.   Had Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, been adequately trained and supervised in the use of force, they would have established a proper command and refrained from initiating pursuit, executing two PIT maneuvers, firing more than 25 shots into JOHN JENUWINE's vehicle, and obtained medical care for JOHN JENUWINE following the excessive and unlawful shooting.

181.   Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, if properly trained and supervised, would have used de-

escalation techniques as required by department policy to avoid the use of deadly force.

182. Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, if properly trained would not have attempted either PIT maneuver on JOHN JENUWINE's van, and would have de-escalated force at each point that resistance decreased as required by department policy to avoid the use of deadly force.

183. The risk of the death to a resident such as JOHN JENUWINE from the failure to adequately train and supervise its officers in the use of deadly force is so obvious or foreseeable that it amounts to deliberate indifference.

184. It is obvious that Defendant, WASHTENAW COUNTY failed to adequately train and supervise its officers, including Defendants, DEPUTIES JOHN/JANE Doe 1-6, JACOB GOMBOS, and JONATHAN EARLEY, in the proper use of deadly force, because their response escalated rather than de-escalated even though they knew JOHN JENUWINE was not brandishing or aiming a weapon, was not the "two black guys" they had been seeking that had allegedly been armed.

185. JOHN JENUWINE was shot and killed and forced to die a slow and painful death as a direct and proximate result of Defendant, WASHTENAW

47

COUNTY's failure to adequately train and supervise its officers in the use of deadly force.

186.   Defendant, WASHTENAW COUNTY, is liable to the ESTATE OF JOHN JENUWINE, for all damages that are allowable under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the common law, and Michigan Wrongful Death Act, M.C.L. § 600.2922.

187.   Defendant, WASHTENAW COUNTY, is liable to Plaintiff, LARRY JENUWINE, as personal representative for the ESTATE OF JOHN JENUWINE, and acting on behalf of those persons who are entitled to damages under MCL § 600.2922:

      a. Violation of his constitutional rights under the Fourth Amendment (through the Fourteenth Amendment) to the United States Constitution, including, but not limited to, the right to be free from an unreasonable seizure of his person and/or to be free from unnecessary and excessive use of physical force;
      b. Death;
      c. Conscious pain and suffering;
      d. Fright and shock;
      e. Anxiety;
      f. Mental anguish;
      g. Emotional distress;
      h. Humiliation and/or mortification;
      i. Economic loss;
      j. Punitive damages;
      k. Exemplary damages;
      l. Attorneys fees and costs pursuant to 42 U.S.C. §1988;
      m. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and
      n. Any other damages allowed by law.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT X
## STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JANE/JOHN DOE 1
## (first PIT)

188. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

189. Defendant, DEPUTY JANE/JOHN DOE 1, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

190. Defendant, DEPUTY JANE/JOHN DOE 1 was grossly negligent and breached these duties to JOHN JENUWINE.

191. Defendant, DEPUTY JANE/JOHN DOE 1 breached his/her duties to JOHN JENUWINE including but not limited to:

    a. Failure to deescalate;
    b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;

c.  An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;

d.  Failure to withdraw force upon reduction in resistance;

e.  Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;

f.  Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;

g.  An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;

h.  Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;

i.  Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.

j.  Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT XI
## STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JANE/JOHN DOE 2
## (second PIT)

192.  Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

193.   Defendant, DEPUTY JANE/JOHN DOE 2, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

194.   Defendant, DEPUTY JANE/JOHN DOE 2 was grossly negligent and breached these duties to JOHN JENUWINE.

195.   Defendant, DEPUTY JANE/JOHN DOE 2 breached his/her duties to JOHN JENUWINE including but not limited to:

a.   Failure to deescalate;
b.   Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
c.   An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
d.   Failure to withdraw force upon reduction in resistance;
e.   Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;
f.   Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;
g.   An inappropriate, excessive, and inexcusable use of deadly force with a gun shooting JOHN JENUWINE;
h.   Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;
i.   Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.
j.   Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this

Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

### COUNT XII
### STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JACOB GOMBOS
### (shooter)

196. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

197. Defendant, DEPUTY JACOB GOMBOS, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

198. Defendant, DEPUTY JACOB GOMBOS was grossly negligent and breached these duties to JOHN JENUWINE.

199. Defendant, DEPUTY JACOB GOMBOS breached his duties to JOHN JENUWINE including but not limited to:

    a. Failure to deescalate;
    b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
    c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
    d. Failure to withdraw force upon reduction in resistance;
    e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;

52

f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;

g. An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;

h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;

i. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE,

j. Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT XIII
## STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JONATHAN EARLEY
## (shooter)

200. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

201. Defendant, DEPUTY JONATHAN EARLEY, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

202.   Defendant, DEPUTY JONATHAN EARLEY was grossly negligent and breached these duties to JOHN JENUWINE.

203.   Defendant, DEPUTY JONATHAN EARLEY breached his duties to JOHN JENUWINE including but not limited to:

a. Failure to deescalate;
b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
d. Failure to withdraw force upon reduction in resistance;
e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;
f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;
g. An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;
h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;
i. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.
j. Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

54

## COUNT XIV
## STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JANE/JOHN DOE 3
## (shooter)

204. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

205. Defendant, DEPUTY JANE/JOHN DOE 3, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

206. Defendant, DEPUTY JANE/JOHN DOE 3 was grossly negligent and breached these duties to JOHN JENUWINE.

207. Defendant, DEPUTY JANE/JOHN DOE 3 breached his/her duties to JOHN JENUWINE including but not limited to:

a. Failure to deescalate;
b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
d. Failure to withdraw force upon reduction in resistance;
e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;
f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;
g. An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;

55

h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;

i. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.

j. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.

k. Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT XV
## STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JANE/JOHN DOE 4
## (shooter)

208. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

209. Defendant, DEPUTY JANE/JOHN DOE 4, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

210. Defendant, DEPUTY JANE/JOHN DOE 4 was grossly negligent and breached these duties to JOHN JENUWINE.

211. Defendant, DEPUTY JANE/JOHN DOE 4 breached his/her duties to JOHN JENUWINE including but not limited to:

a. Failure to deescalate;
b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
d. Failure to withdraw force upon reduction in resistance;
e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;
f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;
g. An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;
h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;
i. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.
j. Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

## COUNT XVI
### STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JANE DOE 5

57

**(failure to intervene, woman in video)**

212. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

213. Defendant, DEPUTY JANE DOE 5, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

214. Defendant, DEPUTY JANE/JOHN DOE 5 was grossly negligent and breached these duties to JOHN JENUWINE.

215. Defendant, DEPUTY JANE/JOHN DOE 5 breached her duties to JOHN JENUWINE including but not limited to:

   a. Failure to deescalate;
   b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;
   c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;
   d. Failure to withdraw force upon reduction in resistance;
   e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;
   f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;
   g. An inappropriate, excessive, and inexcusable use of deadly force with a gun by shooting JOHN JENUWINE;
   h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;

   i.  Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.

   j.  Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

**COUNT XVII**
**STATE LAW CLAIMS GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT DEPUTY JOHN DOE 6**
**(failure to intervene, man in video)**

216. Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

217. Defendant, DEPUTY JANE/JOHN DOE 6, owed JOHN JENUWINE a duty to act legally and reasonably and to avoid the use of unnecessary, excessive, and/or deadly force.

218. Defendant, DEPUTY JANE/JOHN DOE 6 was grossly negligent and breached these duties to JOHN JENUWINE.

219. Defendant, DEPUTY JANE/JOHN DOE 6 breached his duties to JOHN JENUWINE including but not limited to:

   a.  Failure to deescalate;

b. Failure to investigate other white vans after learning JOHN JENUWINE did not match the "two black guys" he/she had been investigating;

c. An inappropriate, excessive, and deadly PIT maneuver to JOHN JENUWINE's vehicle, which was more likely to rollover;

d. Failure to withdraw force upon reduction in resistance;

e. Failure to allow JOHN JENUWINE time to comply with orders prior to shooting at JOHN JENUWINE;

f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing JOHN JENUWINE to flee from a traffic violation after it was determined he did not match the description of the "two black guys" that had allegedly shown a gun to a woman in the community;

g. An inappropriate, excessive, and inexcusable use of deadly force with a gun shooting JOHN JENUWINE;

h. Failure to obtain medical attention for JOHN JENUWINE following the inappropriate, excessive, and inexcusable use of force;

i. Failure to intervene to prevent fellow officers from using excessive/deadly force against JOHN JENUWINE.

j. Any additional acts and/or failures determined through discovery.

**WHEREFORE**, Plaintiff, ESTATE OF JOHN JENUWINE, deceased, by LARRY JENUWINE, Personal Representative, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest, and attorney fees.

Dated: June 10, 2026       Respectfully submitted,

            By: */s/ Todd F. Flood*
              Todd F. Flood (P58555)
              Michael D. Weaver (P43985)
              Maura B. Battersby (P79089)
              FLOOD LAW, PLLC
              Attorneys for Plaintiff
              155 W. Congress, Suite 350
              Detroit, MI 48226
              (248) 547-1032
              tflood@floodlaw.com
              mweaver@floodlaw.com
              mbattersby@floodlaw.com