# EXHIBIT E

# Washtenaw County Sheriff's Office

## Rule and Regulation

## Vehicle Pursuits

## Reference Number: 3.05 RR

Jerry L. Clayton, Sheriff

| | |
|---|---|
| **Subject:** | **Vehicle Pursuits** |
| **Chapter:** | **Use of Force, Firearms, Control** |
| **Status:** | **Revised** |
| **Compliance:** | **Class 1** |
| **Supersedes:** | **All Previous Directives** |
| **Standards Reference:** | **CALEA 41.2.2** |
| **Prepared by:** | **Mark Ptaszek, Undersheriff; Nancy Hansen, Captain** |
| **Reviewed by:** | **Keith Flores, Commander; Mark Ptaszek, Undersheriff** |
| **Issued by:** | **Mark Ptaszek, Undersheriff** |
| **Issuing Authority:** | **Jerry L. Clayton, Sheriff** |
| **Date of Issue:** | **12/22/20** |
| **Public Facing:** | **Yes** |

I. INTRODUCTION

The Sheriff's Office recognizes that there are numerous situations that arise in law enforcement that are unique, including those situations where Deputy Sheriffs' will encounter individuals who endanger public safety by their actions and/or refuse to comply with the law. Vehicular pursuits of fleeing suspects are such a situation.

By their nature, vehicular pursuits present a danger to the public, the suspect, and the law enforcement officers involved in a pursuit. Further, the tactics used to stop a fleeing vehicle may be considered a use of force. As such, deciding whether to pursue a motor vehicle and/or whether to continue the pursuit once it is initiated is among the more critical decisions made by law enforcement officers. It is a decision which must be made quickly and under difficult, often unpredictable circumstances.

The primary purpose of this policy is to secure a balance between the protection of life and property and a law enforcement officer's sworn duty to enforce the law and apprehend violators. To this end, it is a restrictive policy. It provides carefully defined constraints, active supervision, qualitative review, and prohibits pursuits for minor violations. Its intent is to guide a Deputy Sheriff's discretionary decision making, where such discretion is granted, in matters of vehicular pursuits.

Recognizing that it is impossible for this policy or any standard operating procedure to anticipate all possible circumstances, with the apprehension of a fleeing suspect as with many other situations, time, distance and patience are sound tactics; and, whenever

possible, Deputy Sheriffs should take steps designed to de-escalate situations and avoid pursuits.
Engaging in a vehicle pursuit, where it is not prohibited in this or other Sheriff's Office policy and procedure, is a discretionary act. It is expected that every Deputy Sheriff will exercise thoughtful and deliberate judgment and discretion in carefully considering whether it is warranted to engage in a pursuit. As we value and protect life and property, we support a Deputy Sheriff's decision to avoid or disengage from a vehicular pursuit, given the totality of the circumstances faced, wherever possible.

While Deputy Sheriffs are trained in emergency vehicle operation (EVO), most alleged perpetrators do not have special training in the operation of motor vehicles.

II. PURPOSE

A. To establish policy, procedures, and guidelines for the:

1. Initiation and/or continuation of a pursuit.

2. Way a pursuit is conducted.

3. Termination of a pursuit.

4. Documentation of a pursuit.

B. To reduce risk and any associated harm from a pursuit.

C. To maintain public trust and confidence in Sheriff's Office operations.

D. To maintain the fundamental law enforcement mission to protect life and property as we enforce the law.

III. POLICY

It is the policy of the Sheriff's Office to:

A. Protect life and property in the enforcement of the law and the performance of its myriad duties.

B. Prohibit vehicle pursuits for minor traffic offenses and non-assaultive misdemeanors, where there is no other articulable reason to pursue.

C. Only engage in pursuits when the action is based upon articulable reasonable belief and/or probable cause, not just a mere hunch, assertion, or unsubstantiated opinion, considering 1) the degree of risk to which authorized employees (see definitions) expose themselves and others, and 2) weighing the need for immediate apprehension against the risk created by the pursuit.

D. Regulate the way vehicle pursuits are undertaken and performed including:

1. Active Evaluation and Assessment: Engage in continuous evaluation and assessment of 1) the reason for a pursuit and 2) whether it is reasonable to believe that the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.

   a. Disengaging or discontinuing a pursuit is both permittable and encouraged as a part of 1) the initial assessment of whether to pursue and 2) the subsequent evaluation and assessment of whether to continue the pursuit.

2. Force and Control: Use only that level of force necessary and authorized by the Sheriff's Office Subject Control/Use of Force policy when a vehicle pursuit is undertaken and when an associated apprehension is made.

   a. Intentional vehicle-to-vehicle contact between the pursuing emergency vehicle(s) and the suspect vehicle is prohibited unless the action is in conformance with the agency's Subject Control/Use of Force policy.

3. Use of Marked Vehicles: Allow only marked and fully equipped, authorized emergency police vehicles operated by fully uniformed Deputy Sheriff's to participate in a pursuit.

4. Use of Emergency Equipment:

   a. Always operate authorized emergency police vehicles in a safe and prudent manner, with due regard for public safety and in accordance with law.

   b. Assure that all emergency equipment, in-car, and body-worn-camera video is fully activated and remains activated throughout the duration of the pursuit. In addition, in-car and body-worn-camera video shall remain activated during the apprehension of the suspect(s).

5. Compliance with Law: Upon termination of a pursuit, authorized personnel shall reduce their speed to the posted speed or speed as authorized by statute, turn off all emergency equipment, and operate their assigned patrol unit in accordance with all traffic laws.

6. Documentation: Assure that the fact-based reasonable belief and/or probable cause that justified the pursuit is clearly and objectively stated in the police report regarding the pursuit.

7. Quality Assurance: Have pursuits that result in a fatality, serious personal injury, or serious property damage be investigated by another agency with jurisdiction not directly involved in the pursuit, if possible, at the time.

Commentary: This policy is a rule and regulation (See 1.01 GO). As such, it allows little or no deviation from its terms. It is, by intent and design, a "restrictive" policy. It combines 1) carefully defined constraints, 2) active supervision, 3) a qualitative review process, and 4) prohibits pursuits in certain circumstances.

It expects and requires Deputy Sheriffs to deliberately exercise the most fundamental of skills, i.e., their judgment, in determining whether a pursuit is warranted by balancing the importance and immediacy of apprehension against the potential risk to public safety.

IV. SCOPE

A. This policy and procedure:

1. Applies to all authorized employees (see definitions) of the Sheriff's Office, in whatever positions or capacities they serve.

2. Is a part of the Sheriff's Office overall policies concerning vehicle use and subject control/use of force; and in language, intent and application is closely allied to other documents that may govern such actions.

B. The prohibitions in this policy apply to all employees of the Sheriff's Office, regardless of whether they are authorized to engage in a pursuit.

V. DEFINITIONS

A. Authorized Employee: Employees of the Sheriff's Office who are licensed law enforcement officers in the State of Michigan.

B. Channeling: The effort to direct vehicular traffic into a progressively narrow passageway or lane location on the roadway.

1. Channeling is prohibited.

C. Closing: The effort by an employee to catch-up to a violator of the law who is not fleeing from the employee. Closing is not a form of pursuit.

D. Emergency Equipment: The following equipment in good working order:

1. Police radio communication system.

2. Audible alert system, i.e., siren.

3. Any combination of rotating, flashing, or oscillating red or blue lights which can be seen in a 360-degree pattern around the emergency vehicle.

E. Emergency Vehicle: Any vessel, motorcycle, or four-wheel vehicle, equipped with emergency equipment, not being used to transport trailers, prisoners, witnesses, victims, or citizens regardless of whether the citizen has executed a Citizen Observer Waiver of Liability form.

F. Pacing: The positioning of an emergency vehicle at a stable, fixed distance behind a speeding vehicle to determine the speed of the violator. Pacing is not a form of pursuit.

G. Primary Pursuit Vehicle: A clearly marked, authorized emergency police vehicle which initiates or leads a pursuit. It is the emergency vehicle in the pursuit immediately following the fleeing vehicle.

H. Ramming: The intentional collision of the emergency vehicle with the fleeing vehicle(s) to disable, stop, or alter the course of the fleeing vehicle.

1. See POLICY B., 3., a., i.e., "*Intentional vehicle-to-vehicle contact between the pursuing emergency vehicle(s) and the suspect vehicle is prohibited unless the action is in conformance with the agency's Subject Control/Use of Force policy.*"

I. Roadblock: The placement of emergency vehicles or other vehicles or objects across any portion of the traveled roadway or projected path of a fleeing vehicle, with the exception of stop sticks deployed by trained personnel, in order to prevent or alter the passage of that vehicle.

1. Roadblocks are prohibited.

J. Secondary Pursuit Vehicle: A clearly marked authorized emergency police vehicle which is assisting the primary pursuit vehicle in the pursuit and follows the primary pursuit vehicle at a safe distance.

K. Terminate or Termination: To abandon, end or abort the pursuit.

L. Termination Point: The specific location where the pursuit concludes.

M. Vehicular Pursuit: An active attempt by an authorized employee in full uniform operating a clearly marked, authorized emergency police vehicle with all emergency equipment activated to stop and/or apprehend one or

more occupants of a moving vessel or vehicle based upon reasonable suspicion and/or probable cause, providing the reasonable belief of the authorized employee that the driver of such vehicle is:

1. aware of the attempt, and is

2. resisting apprehension by maintaining or increasing their speed, and/or ignoring the authorized employee's attempt to stop them, or otherwise attempting to elude the authorized employee,

This definition establishes three (3) key elements:

1. The authorized employee is in full uniform in a marked authorized emergency police vehicle with all emergency equipment activated, including in car camera and body worn camera, and should therefore be recognizable as a law enforcement officer.

2. There is reasonable articulable belief that the operator of the vehicle being pursued is 1) aware that the law enforcement officer is attempting to stop them, and 2) resists the attempt.

    i. By way of example but not limitation, resisting may include increasing or maintaining speed, operating in an evasive manner, ignoring attempts and signals to stop, etc.

3. The authorized employee has established 1) a reason for the pursuit based upon reasonable suspicion and/or probable cause, and 2) reasonable belief that the operator of the other vehicle is actively attempting to resist being stopped and/or apprehended.

Commentary: Though risk is ordinarily perceived as increasing in proportion to speed, even low or moderate speeds can create substantial risk in a congested area.

VI. DECIDING WHETHER TO PURSUE

E. As a licensed law enforcement officer in the State of Michigan, a Deputy Sheriff, i.e., an "authorized employee" (see definitions), has the authority to attempt the stop of any person they have:

1. Reasonable suspicion to believe the person has committed a criminal offense or traffic violation in accordance with Michigan statute or local ordinance.

    a. Based upon the totality of circumstances, they have:

        i. enough specific and articulable objective facts,

        ii. taken together with rational inferences from those facts,

        iii. that are associated with the specific person they are stopping.

2. Probable cause to arrest for a criminal or traffic offense in accordance with Michigan statute, case law or local ordinance.

F. Taken together, reasonable suspicions confirmed upon investigation may provide probable cause for a more in-depth investigation, such as a vehicle search and/or the arrest of a vehicle's occupants, depending upon the nature of the suspected violations.

G. While it is the law enforcement officer who initiates the stop, it is the violator who initiates the pursuit. A Deputy Sheriff's decision to pursue should always be:

1. Based upon reasonable suspicion or probable cause.

2. Undertaken with an awareness of the degree of risk to which they expose themselves and others. They must weigh the need for immediate apprehension against the risk created by the pursuit.

VII. PROCEDURE

A. Pursuit Considerations: In the event that a Deputy Sheriff is satisfied that a pursuit is warranted, they must still consider the following factors.

1. The inherent dangerous nature of vehicle pursuits requires that authorized employees continuously analyze the risk/benefit of whether to initiate, continue, or terminate a pursuit.

2. The following factors are to be considered by the employee and on-duty supervisor in determining if a pursuit should be 1) initiated, 2) continued or 3) terminated:

a. Reason and seriousness of the alleged offense, including whether it is known, not merely suspected, that the individual being pursed committed the offense. (See VI. Deciding Whether to Pursue.)

i. Pursuits for minor offenses are prohibited.

b. Known information about the suspect.

c. Presence, flow, and volume of vehicular or pedestrian traffic.

d. Location of the pursuit including but not limited to population density. E.g., is the pursuit taking place in or may likely move into a residential area, business area, school area, highway, freeway, etc.

e. Time of day or night; lighting and visibility.

f. Weather and environmental conditions including makeup of roadway surface and conditions.

g. Speeds involved.

h. Emergency vehicle and driver capability.

i. The apparent capability of the fleeing driver and fleeing vehicle.

j. The possible presence of innocent third parties in the fleeing vehicle.

k. The familiarity the authorized employee has with the geographical area in which the pursuit is occurring.

l. Whether the Sheriff's Office initiated the pursuit or is assisting another agency.

m. The likelihood of success of apprehension, considering all the above factors.

n. The potential for later apprehension, should the pursuit be terminated.

o. Any other conditions or situations that would create an unreasonable risk.

B. Procedures – Primary Pursuit Vehicle

1. Safety: During a pursuit, all occupants of all emergency vehicles shall wear the safety belts and shoulder harnesses provided in the vehicle; and <u>all</u> emergency equipment shall be employed.

2. Emergency Equipment: Upon 1) determining that a vehicle an authorized employee is attempting to stop is fleeing, and 2) the authorized employee makes the decision to pursue the fleeing vehicle, the employee shall, as soon as conditions allow:

a. Activate and/or affirm that <u>all</u> the emergency vehicle's emergency equipment is activated.

b. Assure that the emergency vehicle's emergency equipment remains activated until the termination of the pursuit. In addition, in-car video (ICV) and body worn camera (BWC)

are to remain activated until the apprehension of the suspect(s).

Special Note: Failure of any portion of an emergency vehicle's emergency equipment to operate at any point during a pursuit situation shall terminate the primary (or secondary) pursuit vehicle's involvement in the pursuit.

3. Documentation: The pursuing employee shall, as soon as possible, activate their body-worn camera (BWC) which shall operate in addition to and in conjunction with the in-car video (ICV).

4. Notification: The pursuing employee shall, as soon as practicable, notify Metro Dispatch of the pursuit on their primary radio channel, which will be utilized during the pursuit unless changed by Metro Dispatch; and provide Metro Dispatch with:

   a. Unit identification.

   b. Offense/reason/probable cause for which the suspect vehicle is being pursued.

   c. Location of the initiation of the pursuit.

   d. Direction of travel.

   e. Description of the suspect vehicle, including but not limited to the license plate number, if possible.

   f. Description and number of the suspect vehicle's occupants, including but not limited to whether the pursuing Deputy believes that the suspect is known to them, is a juvenile, etc.

   g. Speeds traveled.

   h. Weather and road conditions including but not limited to items such as construction area, poor repair, extreme curves.

   i. Population density and volume of pedestrian traffic.

j. Location of the termination of the pursuit.

4. Continuous Communication Updates: The pursuing employee shall continuously update Metro Dispatch of the direction of travel, speeds traveled, road conditions (if they've changed), and any other relevant factors or conditions regarding the pursuit, as well as any evasive actions being taken by the fleeing vehicle, by way of example but not limited to running red lights, stop signs, traveling in the wrong lane of travel, or other egregious violations, etc.

5. The employee <u>shall</u> always:

   a. Operate the emergency vehicle in compliance with the law and with the policy requirements set forth within this rule and regulation. (See X. Legal Reference.)

   b. Maintain a safe, reasonable distance and position in the roadway behind the fleeing vehicle.

6. The employee <u>shall not</u>:

   a. Ram or utilize roadblock or channeling techniques on the fleeing vehicle unless the use of deadly force is justified in compliance with the Sheriff's Office Use of Force policy.

   b. Discharge a firearm into the fleeing vehicle unless the use of deadly force is justified in compliance with the Sheriff's Office Use of Force policy.

<u>Commentary</u>: Based upon the known information at the time, the on-duty command officer may, in their sole discretion, decide whether the pursuit should be terminated or allowed to continue. (See VI. Procedures, H. Responsibilities – On-Duty Command.)

B. Procedures – Primary Pursuit Vehicle: Termination of Pursuit

1. The employee shall terminate the pursuit any time, when:

a. Risk: The risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.

   i. By way of example but not limitation, risk could include environmental conditions, weather conditions, or other variable factors including those listed within this rule and regulation.

b. Vehicle/Equipment Failure: Any of the emergency equipment on the emergency vehicle should fail to operate properly, or the emergency vehicle suffers damage or a mechanical defect which causes its continued operation to be unsafe.

c. Supervisory Order: Employee(s) are ordered to terminate the pursuit by a supervisor.

d. Identity of Offender: The offender's identity is known, and the offense is not life threatening.

e. Age of Offender: Information is available that the driver of the fleeing vehicle is a juvenile and the underlying offense constitutes a misdemeanor or non-serious felony.

f. Traffic, Injury or Other Emergency: A traffic crash or other emergency or injury is observed during the pursuit and there is no other unit reasonably available to render aid to any injured individuals.

   i. If circumstances allow, the primary pursuing vehicle may delegate this responsibility to render assistance to a secondary pursuing unit or other unit.

g. Jurisdiction: The pursuit was initiated and being conducted by another agency and leaves the boundaries of Washtenaw County.

2. Upon termination of a pursuit, the employee shall notify Metro Dispatch of the following:

    a. Location of termination of the pursuit.

    b. Number of subjects in custody, if any.

    c. Last seen direction of travel of the feeling vehicle or other subjects.

    d. Whether additional units are required to assist in the apprehension of offender(s).

3. Re-Initiation of Pursuit: Should a Deputy Sheriff terminate a pursuit and then, for whatever reason, re-initiate the pursuit of the same vehicle and suspect(s), they are to immediately abide by and comply with all applicable provisions of Sheriff's Office policy and procedure, including immediate notification of Metro Dispatch that they have re-initiated the pursuit.

C. Procedures – Post Pursuit Investigation

1. Upon termination of the pursuit and as a part of the overall incident report, the employee shall collect and/or catalogue any pursuit related evidence, including but not limited to impounding the fleeing vehicle, if deemed appropriate, given 1) the nature of the actions which led to the pursuit, and 2) the totality of circumstances encountered.

D. Procedures – Secondary Pursuit Vehicle

1. The number of secondary pursuit vehicles shall not exceed two (2).

2. Only one (1) secondary pursuit vehicle shall be utilized in the following situations:

    a. The pursuit is initiated by another agency and that agency, or agencies, is still involved in the pursuit.

b. There is only one (1) occupant of the fleeing vehicle.

3. The secondary pursuit vehicle shall:

a. Notify Metro Dispatch, on an alternate dispatch channel if possible, when it can assist in the pursuit.

b. Upon joining the pursuit, shall inform Metro Dispatch on the primary dispatch channel.

c. Assume the responsibility for consistently updating Metro Dispatch of the pursuit's direction of travel, speed, evasive driving, and other information, when needed.

d. At all times maintain a safe and reasonable distance and position in the roadway behind the primary pursuit vehicle.

e. At all times during the pursuit, operate their emergency vehicle in compliance with the law and with the policy requirements set forth within this rule and regulation.

f. Terminate its involvement with the pursuit as required within this rule and regulation.

4. The secondary pursuit vehicle shall not:

a. Pass the primary pursuit vehicle unless requested to do so by the primary vehicle, provided it can be done so in a safe manner.

b. Attempt to pass the fleeing vehicle at any time during the pursuit, unless so authorized by the on-duty command officer.

D. Procedures – Other Sheriff's Office Units

1. No other agency vehicles or personnel, other than the primary and secondary pursuit vehicles, shall become directly involved in the pursuit unless so authorized by the on-duty command officer.

2. Upon termination of the pursuit, other agency personnel may respond to the area in which the pursuit ended in order to assist in the apprehension of the fleeing subject(s), unless notified by the primary pursuit vehicle to the contrary.

3. At all times during the pursuit, or when responding to assist pursuing vehicles with the apprehension of fleeing offenders, Sheriff's Office personnel shall operate their emergency vehicles in compliance with the law and with the policy requirements set forth within this rule and regulation and other Sheriff's Office policy and procedure and professional standards. (See X. Legal Reference.)

Commentary: Care should be taken by on-duty (or off-duty) units in the area of a pursuit to exercise prudent discretion prior to converging upon the location where the pursuit terminated. First, other emergencies and situations may occur in other locations that require a timely and effective law enforcement response. Second, with sufficient units present to manage the scene where the pursuit ended, it may be more tactically sound for units to consider managing traffic in the area, acting to preserve evidence, or forming a perimeter if a subject fled from the vehicle being pursued in anticipation of the use of a police service dog to track the subject, etc.

E. Other Law Enforcement Agency Pursuit

1. The primary pursuit vehicle from another law enforcement agency shall remain the primary vehicle in Washtenaw County Sheriff's Office jurisdiction, unless:

   a. The controlling pursuit authority specifically requests assistance from the Sheriff's Office.

2. Regardless of the request from another law enforcement agency to assume responsibility as the primary pursuit vehicle, Sheriff's Office employees may not assume responsibility for another agency's pursuit unless:

   a. They have received permission to do so from on-duty command, who will determine whether the known facts regarding the pursuit permit a pursuit in accordance with this policy and procedure.

3. Mere notification or knowledge of the pursuit of another law enforcement agency shall not be construed as a request to participate.

F. Procedures – Care and Consideration of Victims

1. The primary pursuit vehicle is responsible for ensuring assistance is provided to any individuals who they believe may have been injured during a pursuit.

2. If circumstances allow, the primary pursuing vehicle may delegate this responsibility to render assistance to a secondary pursuing unit or other unit.

G. Procedures – Air Support

1. If law enforcement Air Support is available and makes visual contact with a suspect vehicle, they may assume the responsibility of the primary unit.

2. With the assistance of Air Support, the original primary, secondary, or additional grounds units (as determined by the pursuit supervisor) will continue their response toward the location of the suspect vehicle and the supervisor will continue to evaluate the situation and determine the hazards related to the pursuit.

3. Upon assuming responsibility as the primary unit, Air Support will, accordingly, assume responsibility for maintaining visual contact with the suspect vehicle and provide timely updates on pursuit conditions, location and the direction of travel of the suspect vehicle to ground units through Metro Dispatch on the primary radio channel for the pursuit.

    a. Air Support can also provide best routes of travel to the suspect vehicle and informing ground units of any potentially hazardous conditions that may affect the pursuit in general and/or the involved ground units.

H. Responsibilities – On Duty Command Officer

1. Authority: The on-duty command officer:

   a. Has overall authority for the pursuit and shall be responsible for monitoring the pursuit including but not limited to 1) the reasons that led to the pursuit and 2) ensuring the pursuit's compliance with all agency policy and procedure.

   b. May at any time terminate the pursuit or the agency's involvement in it, pursuant to the requirements in this rule and regulations or other Sheriff's Office policy, procedure, and professional standards.

2. The on-duty command officer shall:

   a. Monitor the overall progress of the pursuit.

   b. Direct and coordinate the allocation of agency personnel and resources with Metro Dispatch to support and assist in the pursuit.

   c. Direct and/or coordinate 1) the support, assistance and resources of other agencies involved with the pursuit, or 2) in determining the Sheriff's Office involvement in another agency's pursuit.

   d. Assure that adequate resources remain available for response to other situations or emergencies that may reasonably be anticipated or are occurring.

   e. Order the termination of a pursuit when there is no immediate and/or apparent threat to public safety. Criteria for ordering the termination of a pursuit includes but is not limited to:

      i. The suspects identify is known and an apprehension can occur at a later time.

ii. The offender is a juvenile and the offense is a misdemeanor or non-serious felony.

F. Responsibilities – Metro Dispatch

1. Upon notification of a pursuit, Metro Dispatch shall do the following:

a. Allocate "emergency radio traffic" to the primary pursuit vehicle on the primary dispatch channel.

b. Note the:

i. Time the pursuit was initiated.

ii. Reported location of the beginning of the pursuit.

iii. Apparent or known reason(s) for the pursuit.

iv. Primary and secondary pursuit vehicles and personnel assigned to the pursuit.

c. Confirm, as soon as practical, that on-duty command is notified and aware of the fact that a pursuit is taking place.

d. Obtain, if possible, the vehicle registration plate number and provide the registration information to the pursuing units and duty command.

e. Alert other law enforcement authorities of the reason and path of the pursuit as may be appropriate.

f. Under the direction of on-duty command, coordinate and support the involvement of:

i. Sheriff's Office personnel and vehicles in the pursuit.

ii. Other agencies involvement in the pursuit.

iii. The response of additional units to assist in the apprehension of subjects who have fled from the suspect vehicle.

g. Make an electronic recording of the pursuit's radio traffic.

2. Upon termination of the pursuit, Metro Dispatch shall note:

a. The location of termination.

b. The time when the pursuit was terminated.

3. Upon receiving notification that the pursuit is entering another agency's jurisdiction, Metro Dispatch shall forward all critical information possessed to that agency including the reported reason(s) for the pursuit.

G. Tire Deflation Devices

1. The use of tire deflation devices in a pursuit is authorized in situations where they can be safely deployed, subject to the following guidelines:

a. Training: The employee using such devices has been trained in the use of such devices in accordance with Sheriff's Office rules and regulations and the manufacturers recommended use.

b. Notification: All agencies involved in the pursuit that are in radio contact with the agency through Metro Dispatch are notified of the deployment of such devices. Such notification shall include location and related lane-use restrictions.

c. Deployment: The employee who deploys the device shall stay with the device and collect it. Used devices shall be returned to the on-duty command officer.

<u>Special Note</u>: When stop sticks have been deployed and become damaged, deputies must fill out the online Stop Stick form to get the damaged sticks replaced.

https://www.stopstick.com/home/pursuit-reporting

i. If a vehicle is involved in a crash after it strikes the tire deflation device, the duty command officer to whom it is returned, shall log it as evidence.

d. Restrictions: Tire deflation devices shall never be utilized on motorcycles, all-terrain vehicles (ATV), or similar "open" vehicles of any kind.

2. The primary and secondary pursuit vehicles will make every effort to avoid the tire deflation devices.

VII. REPORTING REQUIREMENTS

A. All required reports shall be completed and submitted to the on-duty command officer prior to the end of the employee's tour of duty, unless exempted by the on-duty command officer. On-duty command shall then notify the operational area Lieutenant, Captain, Division Commander or a higher rank of such pursuit and paperwork completion.

a. Exemptions from this requirement should be rare. On-duty command should have clear and specific justification as to why they would recommend such an exemption.

B. The Primary Pursuit Vehicle's report shall include but not be limited to:

a. Incident Report for the pursuit, detailing:

i. Offense/reason/probable cause for the initial contact/stop of the suspect vehicle.

ii. Employees in the primary pursuing vehicle.

iii. All agencies involved.

iv. Suspect vehicle description.

v. Suspects and other occupants of pursued vehicle (or their descriptions if names are unknown).

vi. Location and time of the beginning of the pursuit.

vii. Roads and directions traveled.

viii. Speeds traveled.

ix. Any evasive actions taken by suspect/suspect vehicle.

x. Termination point.

xi. Time of termination.

xii. Reason for termination.

xiii. Force utilized in the apprehension of the suspect(s), if any.

xiv. Any injuries or property damage resulting from the pursuit.

xv. Outcome of the pursuit.

xvi. Other pertinent information relevant to the circumstances and the criminal prosecution of the operator of the fleeing vehicle.

2. E-Impound form completed as appropriate.

C. The Secondary Pursuit Vehicle's report shall include but not be limited to:

1. Employees in the secondary pursuing vehicle(s)

2. Roads and directions traveled

3. Speeds traveled

4. Other pertinent information relevant to the circumstances and the criminal prosecution of the operator of the fleeing vehicle not covered in the primary pursuit vehicle's report.

D. On-Duty Command Officer

1. General: Copies of all reports and memoranda prepared by Sheriff's Office employees shall be submitted to and reviewed by the on-duty command officer, prior to the end of their tour of duty.

   a. Exemptions from this requirement should be rare. On-duty command should have clear and specific justification as to why this cannot be completed.

2. Duties: The on-duty command officer shall:

   a. Internal Review: Review each pursuit for 1) accuracy and completeness of all required documentation and 2) compliance with Sheriff's Office policies.

   b. Post Action Report: Prepare a summary memorandum addressed to the operational area Lieutenant, detailing 1) the circumstances that led to the pursuit, and 2) pursuit policy compliance, or non-compliance, of the agency employees involved.

      i. This memorandum shall be completed and forwarded by the end of the next scheduled tour of duty of the command officer following the tour of duty in which the pursuit occurred; unless excused by the operational area Lieutenant, Captain, Division Commander or a higher rank.

      ii. The operational area Lieutenant shall forward the memorandum and copies of reports to the Captain and Division Commander for review.

   c. Video: Creates a case file within Evidence.com that includes all video related to the pursuit. Ensures all the videos are tagged appropriately with Pursuit and/or Use of Force if applicable. The case file will be shared with the operational area Lieutenant, Captain, and Commander.

d. Pursuit Related Vehicle Crash: Prepare a Uniform Crash Report (UD-10) should a motor vehicle crash(es) occur during the pursuit involving the fleeing vehicle or any Sheriff's Office vehicle(s) with each other or any third party and another agency is unavailable to complete the report.

e. Pursuit Related Use of Force: Prepare a Use of Force Report, if applicable.

f. Prepare any other reports or forms 1) as directed or 2) that may be required by agency policy.

VIII. QUALITY ASSURANCE REVIEW

A. Operational Lieutenant:

1. Reviews the ICV and BWC, memo submitted by on duty command and signs off on the memo then turning it over to the Captain.

2. Ensures the ICV and BWC files in the case file are tagged appropriately for proper retention period.

B. Division Captain: Reviews the ICV and BWC, memo and makes notes/recommendations to the Commander for final approval.

C. Division Commander: Reviews the ICV and BWC, memo and then approves or recommends any possible disciplinary actions.

2. Any pursuits that result in a fatality, serious personal injury, or serious property damage shall be investigated by another agency with jurisdiction not directly involved in the pursuit.

VIII. TRAINING

A. All authorized employees (see definitions) shall receive training regarding vehicle pursuits.

1. In-service training may be held in general conjunction with annual use of force and firearms training and qualification.

B. An annual report shall be compiled and provided to the Sheriff that will confirm the in-service pursuit training of all authorized employees within the Police Services Division in conjunction with the annual use of force and firearms training and qualification.

IX. LEGAL REFERENCE

A. Michigan Motor Vehicle Code

MCLA §257.603 provides in pertinent part:

(1) The provisions of this chapter . . . apply to the drivers of all vehicles owned or operated by [any political subdivision] of the state, subject to the specific exceptions as are set forth . . . with reference to authorized emergency vehicles.

(2) The driver of an authorized emergency vehicle when responding to an emergency call . . . may exercise the privileges set for in this section, subject to the conditions of this section.

(3) The driver of an authorized emergency vehicle may do any of the following:

a) Park or stand irrespective of the provisions of this act.
b) Proceed through a red or stop signal or stop sign but *only after slowing down as may be necessary to allow for safe operation*. (Emphasis added.)
c) Exceed the prima facie speed limit so long as he does not endanger life or property.
d) Disregard regulations governing direction or movement or turning in specified direction.

MCLA §257.632 provides in pertinent part:

Sec.632. The speed limitations set forth in this chapter shall not apply to vehicles when operated with due regard for safety under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation . . . *This exemption shall not, however, protect the driver*

*of any such vehicle from the consequences of a reckless disregard of the safety of others.* (Emphasis added.)

B. State Case Law

*Fisher v. City of Ann Arbor* (Michigan Supreme Court). Even though legally engaged in emergency driving or pursuit, an officer is not relieved of the duty to drive with "due regard" for the safety of all persons, nor is an officer protected from the consequences of any reckless disregard for the safety of others.

C. Federal Case Law

*Brower v. County of Inyo* (United States Supreme Court). Creating a roadblock in the path of a fleeing driver and pursuing them into it constitutes a "seizure" within the meaning of the fourth amendment to the United States Constitution.

*City of Canton v. Harris* (United States Supreme Court). Failure to train officers in a duty, where the need for training is obvious and lack of training is likely to result in violation of constitutional rights, can make a municipality liable.

X. MODIFICATION

The Sheriff or Undersheriff may modify the provisions of this policy and procedure.

XI. COMPLIANCE

A. All employees shall comply with all provisions of this rule and regulation. A violation of any section is a Class 1 offense and may result in corrective disciplinary action up to and including discharge.

B. A violation may also be a violation of other Sheriff's Office professional conduct standards which may result in corrective disciplinary action up to and including discharge.